IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                      No. 17-CR-2955-WJ

ROBERT REAL,

    Defendant.

## MEMORANDUM OPINION AND ORDER SUSTAINING DEFENDANT'S OBJECTION TO THE SENTENCING GUIDELINE ENHANCEMENT UNDER USSG § 2K2.1(b)(5) IN THE PRESENTENCE REPORT

THIS MATTER comes before the Court following a hearing on *Defendant Robert Rael's Sentencing Memorandum, Objections to Presentence Report and Sentencing Request* (**Doc. 87**, filed 9/14/18) and *United States' Sentencing Memorandum* (**Doc. 88**, filed 9/20/18). At the Court's direction, the parties filed supplemental sentencing memoranda addressing in part Defendant's objection to receiving a four-level enhancement under United States Sentencing Guideline ("USSG") § 2K2.1(b)(5) for trafficking firearms. *See* **Docs. 94**, **97**. The Court has reviewed the reports from the United States Probation Office (Docs. 84, 89) and has considered the parties' pleadings, the arguments presented by counsel at the October 1, 2018 hearing, and the applicable law. For the reasons stated below, the Court **SUSTAINS** Defendant's objection to receiving the four-level enhancement for firearms trafficking under USSG § 2K2.1(b)(5). *See* Doc. 87 at 7; PSR, ¶ 35. Thus, in the matter of Defendant's sentencing, the correctly calculated Sentencing Guidelines[1] range is 18–24 months based on a total offense level of 15 and criminal history

---

[1] The Presentence Report applies the 2016 Sentencing Guidelines to calculate the proper sentencing range. *See* Doc. 84, ¶ 31. The 2018 version of the United States Sentencing Guidelines Manual became effective on November

1

category of I. Having already denied the Government's request for an upward variance in this case, the Court reserves judgment on Defendant's request for a downward variance until the Court pronounces the sentence in this matter.

## STATEMENT OF THE CASE

Defendant Robert Real ("Defendant") ran a federally licensed firearms business in Espanola, New Mexico. Defendant was indicted for firearms-related violations of federal law, including two counts of selling firearms to felons (Counts 2 and 6), one count of selling a firearm other than a rifle or shotgun to a person under twenty-one years of age (Count 3), two counts of falsification of required firearm transfer records (Counts 4 and 8), and one count of making materially false statements to federal law enforcement agents (Count 7). Doc. 2. Defendant was also charged with conspiring with his wife and daughter to carry out these acts (Count 1). Defendant pleaded guilty to these counts. Doc. 71, Plea Agreement. In the Plea Agreement, Defendant made the following relevant admissions:

> Between on or about March 12, 2016 and February 24, 2017, I took several actions at my office in Espanola and at gun shows around New Mexico designed to ignore or avoid legal or administrative restrictions placed on federally licensed firearm dealers so that I could make more money. I took those actions voluntarily, knowing they created a risk that firearms would be transferred to felons.
> . . . . .
> On or about March 12, 2016, at the High Desert Gun Show in Silver City, New Mexico, I sold a Phoenix Arms Model HP22A .22 caliber semiautomatic pistol to a person whose initials are M.H.D., even though when I performed the ATF background check, the ATF did not authorize that transfer. M.H.D. was a felon. When I made that sale, along with co-defendant LINDA REAL, I did not tell LINDA REAL the results of the background check that would have allowed her to know that we should not have proceeded with the sale.
> . . . .

---

1, 2018. There are no apparent changes to USSG § 2K2.1(b)(5) from the 2016 to the 2018 Sentencing Guidelines and the parties have not brought any changes to the Court's attention.

> On or about June 4, 2016, in Albuquerque, I transferred a Spikes Spartan lower receiver, which is a firearm under federal law but is neither a shotgun nor a completed rifle, to S.R.N., a person under 21 years of age at the time.
>
> . . . .
>
> On or about January 28, 2017, in Carlsbad at a gun show, I sold a Cobra Model FS380 .380 caliber pistol to R.M.S., ignoring the ATF instruction not to complete the transfer right away. It turns out R.M.S. was a felon. In completing this transaction, I did not inform co-defendant LINDA REAL that the ATF had instructed us not to proceed with the sale—so that while LINDA REAL completed the sale with me, only I knew that we should not have been proceeding with the sale.
>
> On or about February 24, 2017, in Santa Fe, I met with agents from the ATF and made materially false statements to them about my firearms transactions—specifically, I said that R.M.S. had driven to Espanola to complete her firearms transaction, as if following the proper protocols for a "Delay" result from the ATF, when actually I sold the .380 pistol to R.M.S. at the Carlsbad gun show in spite of the "Delay" instruction from the ATF informing me that I should not have completed the sale right away. Also, before that meeting with ATF agents, I altered or caused LINDA REAL to alter the ATF Form 4473 for the R.M.S. sale of the .380 caliber pistol to state falsely that the sale had taken place on February 2, 2017 at my store in Espanola.

Doc. 71, ¶ 8.

After the Presentence Report was disclosed, Defendant objected to the application of a four-level enhancement under USSG § 2K2.1(b)(5) for firearms trafficking, on the grounds that the Government failed to show sufficient proof of "specific knowledge" as required by the Court of Appeals for the Tenth Circuit in *United States v. Francis*. *See* PSR, ¶ 35; Doc. 87 at 7–8 (citing *United States v. Francis*, 891 F.3d 888 (2018)). Defendant has also requested a downward variance to a sentence of time-served and home confinement for a period of one year, followed by a term of supervised release. Doc. 87 at 11. The Government maintains that the firearms trafficking enhancement is properly applied (Doc. 88 at 1–2), as does the United States Probation Office (Doc. 89, Addendum to Presentence Report). The Government also requests an upward variance to a sentence of sixty months' imprisonment. Doc. 88 at 4. At the October 1, 2018 hearing, the Court

heard argument on the firearms enhancement, variance requests, and the appropriate fine in this matter. The Court ruled that an upward variance is not warranted in this case but continued the sentencing until the Court could issue a written ruling on the firearms trafficking enhancement. *See* Doc. 92, Clerk's Minutes for October 1, 2018 hearing.

## DISCUSSION

**I.    Sentencing Guideline language and relevant law**

The language of USSG § 2K2.1(b)(5) and the relevant application note from the commentary provide:

(b) Specific Offense Characteristics . . . .
    (5) If the defendant engaged in the trafficking of firearms, increase by 4 levels.
. . . .

13. Application of Subsection (b)(5).—
    (A) In General—Subsection (b)(5) applies, regardless of whether anything of value was exchanged, if the defendant—
        (i) transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and
        (ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—
            (I) whose possession or receipt of the firearm would be unlawful; or
            (II) who intended to use or dispose of the firearm unlawfully.

    (B) Definitions.—For purposes of this subsection:

"Individual whose possession or receipt of the firearm would be unlawful" means an individual who (i) has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or (ii) at the time of the offense was under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. "Crime of violence" and "controlled substance offense" have the meaning given those terms in § 4B1.2 (Definitions of Terms Used in Section 4B1.1). "Misdemeanor crime of domestic violence" has the meaning given that term in 18 U.S.C. § 921(a)(33)(A).

The term "defendant", consistent with § 1B1.3 (Relevant Conduct), limits the accountability of the defendant to the defendant's own conduct and conduct that

the defendant aided and abetted, counseled, commanded, induced, procured, or willfully caused.

USSG § 2K2.1(b)(5) & cmt. n.13(A), (B). The issue before the Court is whether Defendant transferred two or more firearms to an individual whose possession of a firearm Defendant knew or had reason to believe was unlawful, as defined in the Sentencing Guideline section under Application Note 13(A)(ii)(I).[2]

The Court of Appeals for the Tenth Circuit most recently addressed this issue in *United States v. Francis*, 891 F.3d 888 (2018), in which the district court applied this enhancement to a defendant who straw-purchased three firearms for an undercover agent and a confidential informant.[3] In *Francis*, the undercover agent told the defendant that the CI had a "bullshit felony" and a "stereotypical background." 891 F.3d at 893. The Circuit made two essential rulings about this guideline subsection that are operative in the instant case. First, the Circuit ruled that this guideline section derives from the statutory language found in 18 U.S.C. § 922(d) and thus requires the Government to "show by a preponderance that the transferee was actually an unlawful possessor as defined by the guideline[,]" which identifies three categories of unlawful possessors. 891 F.3d at 896. Second, the Circuit rejected the Government's contention that it had met its burden by showing that the defendant had "targeted violent criminals" for firearms sales. *Id.* at 897. The Circuit concluded that

---

[2]  The government never argued that Defendant knew or had reason to believe that the buyers "intended to use or dispose of the firearm unlawfully." *See* USSG. § 2K2.1 cmt. n.13(A)(ii)(II); Doc. 88 at 2 ("Through his deliberate avoidance of the federal background check system, Defendant acted with reckless disregard to the true identity and status of the people to whom he sold firearms . . . . Application note 13 to Guideline § 2K2.1(b)(5) states that the trafficking enhancement applies when an offender transfers or sells two or more firearms, and has reason to believe the firearms would be transferred to a prohibited possessor."). The Government has thus focused its argument on the status of the individuals to whom Defendant transferred the firearms, not what the transferees intended to do with the firearms after receipt. Following the same approach as the Tenth Circuit in *Francis*, the Court does not address this prong because it has not been raised. *See* 891 F.3d at 896 n.8 (making this exact point).

[3]  The Government is mistaken in its position that *Francis* only involved one firearm transaction, which would be insufficient to support the trafficking enhancement.

the district court erred by applying the enhancement on a mere finding that [the defendant] had reason to believe that some of his solicited customers would be unlawful possessors (those convicted of crimes of violence, controlled-substance offenses, or misdemeanor crimes of domestic violence). This goes too far. Instead, the proper focus is on whether [the defendant] had reason to believe that the [buyer] had *a conviction in one of the listed categories of offenses.*

*Id.* at 898 (emphasis added). The *Francis* Court further noted that the confidential informant's statements about having a "bullshit felony" and a "stereotypical background" actually "suggested that the CI did *not* have a conviction for a felony crime of violence." *Id.* at 897. The Circuit ruled in *Francis* that the proper legal standard requires the district court to apply "the guideline's limited categories of unlawful possession" and that a "garden-variety felony" conviction, without more, is insufficient. *Id.*

## II. Analysis

The Governments argues that three sales processed by Defendant support application of the enhancement under USSG § 2K2.1(b)(5). The Government relies on Defendant's admission that he twice sold firearms to felons (M.H.D. and R.M.S.) after the ATF did not authorize the transfers. Defendant also admitted in his Plea Agreement to knowing that at the time of those sales he knew he should not have proceeded with them. Second, the Government points out that Defendant sold a firearm to a person under the age of twenty-one (S.R.N.). The Government asserts that these transactions are sufficient to support application of the Sentencing Guideline enhancement. The Government also argues that "willful blindness" is the same as "knowledge" under Tenth Circuit law in this instance (although it provides no case law to support this point), and that the enhancement applies because Defendant had reason to believe he should not proceed with the sales to these individuals.

Defendant admitted in his Plea Agreement that he took actions "designed to ignore or avoid legal or administrative restrictions placed on federally licensed firearm dealers" and he "took those

6

actions voluntarily, knowing they created a risk that firearms would be transferred to felons." Doc. 71, ¶ 8. In examining Application Note 13 in the Sentencing Guidelines commentary, Defendant's admissions satisfy the first requirement for this enhancement, which is that he conducted two firearms transactions. USSG § 2K2.1(b)(5) cmt. n.13(A)(i). Possibly prior to *Francis*, Defendant's admissions may have supported the second requirement for the enhancement based on evidence that Defendant purposefully proceeded with firearms sales to individuals he had reason to believe were not authorized to possess firearms because ATF did not authorize the two sales right away. *See* USSG § 2K2.1(b)(5) cmt. n.13(A)(ii)(I). The Tenth Circuit made it explicitly clear in *Francis*, however, that for this enhancement to apply, the Government must show two things: first, that the transferee was *in fact* an unlawful possessor as defined by the guideline; and second, that the defendant *had a reason to believe* the transferee "fell into the narrow category of prohibited possessors." 891 F.3d at 897. The Government has failed to satisfy these two requirements, which both hinge on how the guideline section defines an "individual whose possession or receipt of the firearm would be unlawful."

The guideline commentary expressly provides three categories to define an "individual whose possession or receipt of the firearm would be unlawful." As stated in Application Note 13 to the guideline section and as applied in *Francis*, these three categories of prohibited possessors are individuals who have sustained (1) convictions for a crime of violence, (2) convictions for controlled-substances offenses, and (3) convictions for misdemeanor crimes of domestic violence. USSG § 2K2.1(b)(5) cmt. n.13(B)(i); 891 F.3d at 896–97. The guideline definition of an "individual whose possession or receipt of the firearm would be unlawful" expressly provides for these three categories; if the Sentencing Guideline was meant to apply to anyone who had a felony conviction, the definition would instead read "has a felony conviction," or the guideline would not

7

provide further definition at all.[4] The guideline section therefore provides a narrower definition of unlawful possessor than the Government's suggested categories of "convicted felon" or "person under age of twenty-one years." While felons and individuals under the age of twenty-one are generally prohibited from possessing firearms by statutes, the guideline language provides a narrower definition for this enhancement to apply.

The Government has thus failed to carry its burden for two reasons. First, the Circuit in *Francis* stated that this guideline section requires the Government to show by a preponderance of the evidence that "the transferee *was actually* an unlawful possessor as defined by the guideline"—which means the Government must show that the transferee actually falls into one of the three categories of unlawful possessor. 891 F.3d at 896. Defendant has admitted that two of the recipients (M.H.D. and R.M.S.) were felons, but the Government has not provided information about whether these two individuals sustained felony convictions for crimes of violence or controlled-substance offenses, or misdemeanor convictions for domestic violence. According to the Presentence Report ("PSR"), M.H.D. received a felony conviction in Arizona in 2001 but the PSR does not provide the underlying crime. PSR, ¶¶ 15–16. The PSR also provides that R.M.S. received a conviction for "passing a worthless check." PSR, ¶¶ 19–20. The Government has therefore not shown that either transferee in fact had a conviction that made him or her an unlawful possessor *as defined in the guideline section*. Additionally, the fact that one transferee was under the age of twenty-one, without more, does not place that individual into any of the three categories defined in the guideline.

---

[4] The guideline section also provides that an individual is an unlawful possessor if he was under a criminal justice sentence at the time of the offense, but the Government has not raised an issue under this prong. USSG § 2K2.1(b)(5) cmt. n.13(B)(ii).

Second, the Government has also failed to show that Defendant *had reason to believe* that any of the three transferees at issue were unlawful possessors as defined by the guideline section. The Tenth Circuit rejected the proposition that the enhancement applies when the seller has reason to believe the buyer has a "garden-variety" felony conviction because the Circuit ruled that the agent's statement that the buyer had a "bullshit felony" was factually insufficient to support the enhancement. 891 F.3d at 897 ("Francis contends that the government's evidence didn't establish by a preponderance that he had reason to believe that the CI fell into the 'narrow category of prohibited possessors,' including those with a felony crime-of-violence conviction . . . . We agree with Francis."). Therefore, this is not an issue of "willful blindness," but rather an issue of whether Defendant had reason to believe that the transferee had a conviction in one of the three narrowly defined categories. Even assuming the delay issued by ATF on the firearms transactions should have alerted Defendant to the fact that these two transferees were felons, there is no evidence that the delay should have alerted Defendant that these individuals had convictions that fall into one of the guideline's three categories of unlawful possessor (which, as the Court noted above, there is insufficient evidence that these individuals actually had have such convictions anyways).

Finally, at the October 1, 2018 hearing, the Court directed the parties to file supplemental briefs on the case of *United States v. Reese*, No. 11-cr-2294-RB (D.N.M.). At the hearing, Defendant argued that the circumstances in *Reese* were more severe and extensive than in the present case, and that U.S. District Judge Robert C. Brack imposed a sentence of 526 days in that case. Defense referenced the *Reese* case for several sentencing issues, but only relevant here is the application of the firearms enhancement in that case. The Court has reviewed the materials and supplemental briefs submitted by the parties and notes that the circumstances here regarding the firearms trafficking enhancement are factually distinguishable from those the *Reese* case, which

involved straw purchases, more than thirty-five firearms transactions, and the purpose of smuggling those firearms out of this country. To any extent that the *Reese* case may support Defendant's request for a downward variance, the Court will reserve ruling on the downward variance until it pronounces the sentence in this matter.

## CONCLUSION

Accordingly, for the reasons set forth in this Memorandum Opinion and Order, the Court **SUSTAINS** the Defendant's Objection (**Doc. 87** at 7, filed 9/14/18) to the application of the enhancement under USSG § 2K2.1(b)(5) in the Sentencing Guidelines calculation contained in the Presentence Report (Doc. 84, ¶ 35). As the parties do not dispute that the criminal history category is I, and the Court finds that the adjusted offense level is 15, the properly calculated Sentencing Guidelines range is 18–24 months. The Court reserves judgment on the Defendant's request for a downward variance until the Court pronounces the sentence in this matter.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE